## In re WALDRON.
### Patent Appeal No. 2318.

Court of Customs and Patent Appeals.
May 26, 1930.

William R. Kennedy, of New York City, for appellant.

T. A. Hostetler, of Washington, D. C., for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals affirming the decision of the Examiner denying all of appellant's claims—1 to 4, inclusive—for a patent for an alleged invention relating to a process for grinding and polishing plates of glass.

Claim No. 1 has been abandoned in this court.

Counsel for appellant has requested leave of the court to amend claim No. 2, for the reason, as we understand it, that the claim as presented in appellant's application lacks clearness and definiteness. This is an appellate court, and, generally, issues not presented to the tribunals of the Patent Office will not be considered here. Certainly, the court will not consider amendments to claims not presented in the first instance to the Patent Office tribunals. See sections 61 and 62, 35 USCA, and Gowen and Bradford v. Arnold (Cust. & Pat. App.) 37 F.(2d) 430.

In view of the fact that counsel concedes that claim 2 does not properly define the invention, and that it lacks clearness and definiteness, we do not consider it.

Claims 3 and 4 read as follows:

"3. In the process of grinding and polishing plates of glass on a series of tables traversed in end to end contact with each other on stationary guides, the method of frictionally registering adjacent operative tables one with the other by pressure exerted on each table by the next succeeding table."

"4. In the process of grinding and polishing plates of glass on a series of work-supporting tables traversed in end to end contact with each other on stationary guides, effecting frictional registration between adjacent tables by means of mutually contacting surfaces of area so small and the pressure so high that the coefficient of friction between said surfaces is abnormally increased."

The reference is: Brown, 1,508,378, September 16, 1924.

The patent to Brown discloses an apparatus for grinding and polishing plates of glass. It includes a series of tables or carriers in end to end contact propelled by driving devices (which need not be described here) along tracks immediately beneath sets of grinding and polishing discs. The apparatus is designed to carry out the so-called "continuous process," of which a more detailed explanation is found in the Brown specification. We quote:

" * * * After the glass is set as described, each cart or carrier A supporting the piece or pieces which it is designed to support, the carriers are placed on a platform, designated generally by the reference letter 'B,' the carriers being positioned in end to end relation and advanced along the platform 'B' beneath rough-grinding devices and smooth-grinding devices. Enough rough grinding devices and smooth grinding devices are provided in conjunction with the platform 'B' so that the glass on each cart or carrier, 'A,' as it passes along the platform, may be both rough-ground and smoothed ready for the polishing devices. I may also provide polishing devices in conjunction with the rough and smooth grinders so that the piece of glass need not be removed from the carrier 'A' until one side of the glass has been completely ground and polished.

"As soon as the glass has been ground, or ground and polished, upon one side, the plaster in which it is set is softened in any suitable manner and the glass is then turned over and again set in plaster and then started along the same or a second platform 'B,' which is not here illustrated as the construction thereof is similar in all respects to the platform 'B' here shown. * * * *"

It appears from the specification and drawings of the Brown patent that more than one driving device is used to propel the tables or carriers in carrying out the "continuous process." The apparatus is so designed that power is applied by a driving device to one of a series of five tables.

It is contended by counsel for appellant that the involved process was designed to prevent the *abutting ends of the tables from shifting vertically relatively,* so that a practically continuous and solid support is provided conjointly by the tables, and the glass *may be laid thereon over the joints without any danger whatever of breakage*"; that the desired result has been obtained by propelling a series of 30 or 40 tables, "weighing each 3 or 4 tons, by driving power *applied to but one table*"; and that the "excessive friction of the tables on their guides *caused by the weight of the tables and the heavy pressure of the runners thereon,*" holds the abutting ends of the tables rigidly together.

Claim 4 is directed to frictional engagement of a small area of the abutting ends of the tables.

Denying the patentability of the claims, the examiner said:

"The claims were all finally rejected as presenting nothing patentable over Brown and for the reason that the omission of one of the driving devices of Brown would anticipate the entire device of applicant's, as well as the claims presented, with the plurality of driving means which he shows.

"Furthermore, in Brown the tables driven by the first driving means may be considered as one series of tables and those driven by the second driving means as being another series of tables, and thus the claims would read directly on either of these series of Brown's device."

In affirming the decision of the examiner, the Board of Appeals said:

"The only thing which could possibly be intended to distinguish claims 1–3, inclusive, from the reference is the limitation to "stationary guides." In the reference, the guides 22 are stationary and the tables are provided with rollers 21 traveling thereon. The claims do not define anything over the reference.

"Claim 4 merely says that the contacting surfaces of the tables are of such small area and the pressure so high that the coefficient of friction is abnormally increased. This is a mere matter of degree and the claim is so indefinite that it points out nothing structurally different from the reference."

In the operation of the apparatus disclosed in the Brown patent, the driving power is applied to one of a series of five tables. There is nothing to indicate the size or weight of the tables employed. If driving power was applied to one of a series of "30 or 40 tables," the process disclosed by Brown would be identical with the process claimed by counsel to be disclosed by appellant. Four tables in each series of five, employed in the Brown apparatus, are propelled in exactly the same manner and by exactly the same method as the twenty-nine or more tables claimed by counsel to be disclosed in appellant's process. So, if the number of tables in a series be ignored, the language, "the method of frictionally registering adjacent operative tables one with the other by pressure exerted on each table by the next succeeding table," contained in appellant's claim 3, describes precisely the process disclosed in the Brown patent. However, the application of appellant does not specify either the number or the weight, but refers merely to a series of tables. It indicates that an indefinite number of tables in a series will secure a certain result; there may be five, six, or fifty, depending, prob-

ably, on their weight. It would seem, therefore, that, when the reference is considered, appellant is really claiming a patent for a result, and not a definite process for obtaining it. But, however this may be, it is obvious that appellant's application does not describe anything not disclosed in the patent to Brown, and that the involved claims read directly thereon.

Claim 4 is unpatentable for the reasons stated by the Board of Appeals.

The decision is affirmed.

Affirmed.